# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **AQUATE II, LLC** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) Case No. |
| **vs.** | ) |
| | ) |
| **JESSICA TEDRICK MYERS and** | ) |
| **KITUWAH GLOBAL GOVERNMENT** | ) |
| **GROUP, LLC** | ) |
| | ) |
| **Defendants.** | ) |

## VERIFIED COMPLAINT

Plaintiff AQuate II, LLC ("AQuate") hereby files this Complaint for damages and equitable relief against Defendants Jessica Tedrick Myers ('Myers') and Kituwah Global Government Group, LLC ("Kituwah," and collectively with Myers, "Defendants") and states:

## PARTIES

1. Plaintiff AQuate II, LLC is a limited liability company organized under the authority of the Alabama-Quassarte Tribal Town with its principal place of business in Huntsville, Alabama.

2. Defendant Jessica Tedrick Myers (f/k/a Jessica Tedrick) is an individual over the age of 19 and domiciled in North Carolina.

3. Defendant Kituwah Global Government Croup, LLC is a tribal entity organized by the Eastern Band of Cherokee Indians with its principal place of business in Cherokee, North Carolina.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C.

§ 1331 and the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(c). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5. The Court has personal jurisdiction over Defendants pursuant to Alabama's Long-Arm Statute (Ala. R. Civ. P. 4.2) because they have purposefully directed, and continue to purposefully direct, misappropriation activities within the State of Alabama and have performed some of the acts herein within the State of Alabama.

6. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims herein occurred within this judicial district and because the trade secrets and proprietary information subject to protection under the relevant statutes at issue in this action are also located within this judicial district.

**FACTS**

7. AQuate is a tribal enterprise formed to compete for and perform federal government contracts.

8. Since 2012, AQuate has served as the prime contractor providing armed security services aboard the Sea-Based X-Band Radar-1 ("SBX-1") – a semi-submersible platform vessel that operates as part of the U.S. Ballistic Missile Defense System to detect and intercept incoming warheads.

9. AQuate initially won the bid for the SBX-1 contract in 2012 and has continued to provide services after winning the contract again in 2017. AQuate's current contract will end in September of 2022.

10. On February 22, 2022, the Military Sealift Command issued Solicitation No. N3220522R0007, seeking offers to provide qualified security services aboard the SBX-1 commencing October 2022 for a contract term of up to five years. Offers are due by March 18, 2022 (the "Bid Deadline").

11. Myers worked for AQuate from 2013 through 2017 while AQuate was engaged in its initial SBX-1 contract and was preparing its bid to win the second SBX-1 contract.

12. Myers held several positions with AQuate with responsibilities over corporate security and business development.

13. In these positions, Myers had access to and knowledge of AQuate's SBX-1 contract terms, personnel, and bidding information and strategies.

14. As an AQuate employee, Myers signed multiple agreements governing use and disclosure of confidential, proprietary, and other sensitive information, including AQuate's Code of Business Conduct and Ethics, an AQuate Agreement to Protect Company-Sensitive Information, and the AQ Tribal Employee Handbook. These agreements impose ongoing obligations upon Myers that extend past her last date of employment with AQuate and are currently in force.

15. The nondisclosure provisions of the agreements signed by Myers expressly provide that they shall remain in effect even after Myers's termination date.

16. Myers resigned from AQuate in September of 2017, and, in violation of her agreements with AQuate, took with her copies of AQuate's contracts, proposals, personnel, and other security information.

17. Myers is currently employed as the Director of Administration for Defendant Kituwah, which was formed in 2019 for the purpose of engaging in tribal and minority set-aside

government contract work.

18. Upon information and belief, Kituwah is planning to submit an offer to provide security services for the SBX-1.

19. In the days and weeks leading up to the Bid Deadline, Myers, individually and as the agent and employee of Kituwah, has contacted current and former AQuate employees who are or were involved with AQuate's efforts performing and pursuing the SBX-1 contracts.

20. AQuate first learned of these communications on or about March 3, 2022.

21. In these communications, Defendants expressly solicited information regarding AQuate's pricing details and compensation structure for employees under the SBX-1 contract. In one communication, Myers explicitly acknowledged, "I do recall some of the compensation structure from my previous capacity" at AQuate and indicated Kituwah's intent to bid for the SBX-1 contract.

22. On information and belief, Defendants made offers of employment to AQuate's SBX-1 contract employees to continue that work for Kituwah, contingent upon Kituwah winning the bid for SBX-1 work.

23. Upon information and belief, Myers and Kituwah have other confidential, proprietary, and sensitive information regarding AQuate's compensation structure, proposals, contract terms, and bidding strategies for SBX-1 contract work, which Myers and Kituwah intend to use in competition with AQuate for the SBX-1 solicitation.

## COUNT I
## BREACH OF CONTRACT – MYERS

24. AQuate incorporates the allegations contained in paragraphs 1 through 21 above as if fully set forth herein.

25. Myers agreed to the terms of several written agreements with AQuate during her employment, including AQuate's Code of Business Conduct and Ethics, an AQuate Agreement to Protect Company-Sensitive Information, and the AQ Tribal Employee Handbook ("AQuate Employee Agreements"), which impose ongoing obligations upon Myers that extend past her last date of employment with AQuate and are currently in force.

26. AQuate performed all of its obligations owed to Myers during her employment.

27. Myers breached the AQuate Employee Agreements by:

   a. Using AQuate's trade secrets and other proprietary, confidential, or sensitive information for purposes other than to perform her job as an AQuate employee;

   b. Disclosing AQuate's trade secrets and other proprietary, confidential, or sensitive information to individuals and entities outside of AQuate without AQuate's authorization;

   c. Duplicating and removing AQuate's trade secrets and other proprietary, confidential, or sensitive information from AQuate's premises for purposes other than to benefit AQuate and without AQuate's permission;

   d. Failing to protect AQuate's trade secrets and other proprietary, confidential, or sensitive information during her employment; and

   e. Engaging in conduct that conflicts with, compromises the interest of, and impermissibly competes with AQuate.

28. As a result of Myers's breaches of the AQuate Employee Agreements, AQuate has been and will continue to be substantially damaged.

**COUNT II**
**VIOLATION OF THE ALABAMA TRADE SECRETS ACT,**
**ALA. CODE § 8-27-1, et. seq. – ALL DEFENDANTS**

29. AQuate incorporates the allegations contained in paragraphs 1 through 21 above as if fully set forth herein.

30. Defendants have solicited and used, and intend to continue to solicit and use, information regarding AQuate's trade secrets, which include, but are not limited to AQuate's compensation structure, proposals, contract terms, security details, and bidding strategies related to the SBX-1 contract work.

31. AQuate's trade secrets are reflected in technical and nontechnical data that is included or embodied in formulae, patterns, compilations, computer software, drawings, devices, methods, techniques, and/or processes that are not publicly known and are not generally known or knowable by proper means within the relatively small industry of providing qualified armed security services on a naval platform vessel. This information is critical to its business of providing security services aboard naval vessels.

32. At all times relevant, AQuate, as a "Cleared Facility" pursuant to government guidelines, undertook and maintained stringent efforts to keep its information and that of its employees secret by, among other things, requiring all employees to maintain a secret clearance, undergoing monthly training to protect secret government information, marking confidential and secret documents, maintaining critical documents in a class 6 safe with its own security protocols, holding meetings in sensitive compartmented information facilities, and undergoing regular inspections to ensure these and other security protocols are functioning and adequate.

33. AQuate's SBX-1 contract terms, compensation structure, pricing details, bidding details, bidding strategy information, and personnel information are exclusive to AQuate and are

based upon AQuate's unique capabilities to serve the qualified armed security industry based upon 10 years of experience providing such services aboard a naval vessel.

34. These details are of AQuate's making, are not generally available to the public or the security services industry, and are of tremendous economic value. AQuate will suffer irreparable harm if this exclusive information is disclosed outside of AQuate, particularly to a competitor.

35. Defendants have discovered and are in possession of AQuate's trade secrets by improper means through improper solicitation of trade secret information.

36. Furthermore, Myers's disclosure of trade secret information and the use of that information by Myers and Kituwah, is a breach of the confidence AQuate reasonably placed in it former employee, who also signed multiple agreements regarding the nondisclosure of trade secrets, the obligations of which are ongoing.

37. Kituwah and Myers know that the information they are using constitutes AQuate trade secrets and that the information was obtained by improper means and in breach of confidence.

38. Defendants' activities constitute a violation of the Alabama Trade Secrets Act, Ala. Code § 8-27-1, *et seq.*

39. As a result of Defendants' misappropriation of AQuate's trade secrets, AQuate has been and will continue to be damaged, and AQuate should be awarded damages and reasonable attorney's fees pursuant to Ala. Code § 8-27-4(a)(1) and (2).

40. Defendant's misappropriation of AQuate's trade secrets is willful and malicious, entitling AQuate to exemplary damages pursuant to Ala. Code § 8-27-4(a)(3).

41. Defendants' misappropriation of AQuate's trade secrets has caused, and continues to cause, irreparable harm to AQuate, and there is no adequate remedy other than one which

includes an injunction. AQuate will continue to suffer damages and irreparable harm unless and until Defendants' conduct is preliminarily, and thereafter permanently, enjoined by this Court pursuant to Ala. Code § 8-27-4 and Fed. R. Civ. P. 65.

## COUNT III
## VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016, 18 U.S.C. § 1836 – ALL DEFENDANTS

42. AQuate incorporates the allegations contained in paragraphs 1 through 21 above as if fully set forth herein.

43. Defendants have solicited and used, and intend to continue to solicit and use, information regarding AQuate's trade secrets, which include, but are not limited to AQuate's compensation structure, proposals, contract terms, security details, and bidding strategies related to the SBX-1 contract work. This information constitutes trade secrets under 18 U.S.C. § 1839(3).

44. AQuate's SBX-1 contract terms, compensation structure, pricing details, bidding details, bidding strategy information, and personnel information are exclusive to AQuate and are based upon AQuate's unique capabilities to serve the qualified armed security industry based upon 10 years of experience providing such services aboard a naval vessel.

45. These details are of AQuate's making, are not generally available to the public or the security services industry, and are of tremendous economic value. AQuate will suffer irreparable harm if this exclusive information is disclosed outside of AQuate, particularly to a competitor.

46. Defendants have misappropriated AQuate's trade secrets by soliciting and acquiring the trade secrets through improper means and by acquiring the trade secrets with knowledge that they were obtained through improper means.

47. Defendants' misappropriation of AQuate's trade secrets has caused, and continues to case, irreparable harm to AQuate, and there is no adequate remedy other than one which includes an injunction. AQuate will continue to suffer damages and irreparable harm unless and until Defendants' conduct is preliminarily, and thereafter permanently, enjoined by this Court pursuant to 18 U.S.C. § 1836(3)(A) and Fed. R. Civ. P. 65.

48. As a result of Defendants' misappropriation of AQuate's trade secrets, AQuate has been and will continue to be damaged, and AQuate should be awarded damages and reasonable attorney's fees pursuant to 18 U.S.C. § 1836(3)(B) and (D).

49. Defendants' misappropriation of AQuate's trade secrets is willful and malicious, entitling AQuate to exemplary damages pursuant to 18 U.S.C. § 1836(3)(C).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

1. A judgment that:
   a. Defendant Myers has violated AQuate's contractual rights;
   b. Defendants have misappropriated AQuate's trade secrets; and
   c. Defendants have willfully and maliciously misappropriated AQuate's trade secrets.
2. An award to AQuate of damages recoverable under the laws of the State of Alabama and the Federal Defend Trade Secrets Act on each count in the Complaint, including any and all actual, compensatory, and punitive damages, and damages for Defendants' misappropriation in accordance with Ala. Code § 8-27-4 and 18 U.S.C. § 1836.
3. An award to AQuate of exemplary damages against Defendants, resulting from Defendants' willful and malicious misappropriation;

4. An award to AQuate of its costs and reasonable attorneys' fees in accordance Ala. Code §§ 8-27-4 and 18 U.S.C. § 1836.

5. An award to Plaintiff of pre-judgment and post-judgment interest;

6. A preliminary, and thereafter permanent injunction, pursuant to Ala. Code § 8-27-4, 18 U.S.C. § 1836, and Fed. R. Civ. P. 65, enjoining Defendants and their officers, agents, servants, employees, and attorneys, as well as all other persons who are in active concert or participation with them, from using or disclosing any AQuate SBX-1 contract terms, compensation details, pricing details, bidding details, bidding strategy information, personnel information, or any other data connected to or derived from AQuate's SBX-1 contracts and Myers's employment with AQuate; and

7. Any and all other relief that the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury of all issues so triable.

## **VERIFICATION**

I, Famous Marshall, hereby verify that I have authorized the filing of the attached Verified Complaint, that I have reviewed the Verified Complaint, and the facts therein are true and correct to the best of my knowledge, information and belief.

Upon penalty of perjury, executed on this 18th day of March, 2022.

By: _____
Famous Marshall
Sr. Member Representative Manager
AQuate Services LLC
Chairman EDA Board of Directors
Alabama-Quassarte Tribal Town Companies

16419402.v1

/s/ R. Scott Williams
R. Scott Williams ASB-3234-m63r
Frederick D. Clarke ASB-0368-f20m

**OF COUNSEL:**

**RUMBERGER, KIRK & CALDWELL, P.C.**
2001 Park Place North, Suite 1300
Birmingham, Alabama 35203
Telephone:     (205)327-5550
Facsimile:      (205)326-6786
Email:            swilliams@rumberger.com
Email:            fclarke@rumberger.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on the parties requesting notice by this Court's CM/ECF system on this the 18th day of March, 2022.

I FURTHER CERTIFY that I mailed the foregoing document and the notice of electronic filing by U.S. Mail to the following non-CM/ECF participants:

Jessica Tedrick Myers
1189 Tsali Blvd
Cherokee, NC 28719

P O Box 682
Cherokee, NC 28719

Kituwah Global Government Group, LLC
1158 Seven Clans Lane
Whittier, NC 28789

/s/ R. Scott Williams
R. Scott Williams
Frederick D. Clarke

16419402.v1