UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **AQUATE II, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action Number |
| v. | ) **5:22-cv-00360-AKK** |
| | ) |
| **JESSICA TEDRICK MYERS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

AQuate II LLC brings this action against Jessica Tedrick Myers, its former employee, and Kituwah Services LLC, Myers's current employer, for alleged trade secret misappropriation and breach of contract. AQuate claims that Myers took copies of AQuate's business-related documents with her when she resigned from AQuate, and it alleges that she used this information, along with other confidential and proprietary information that she learned while working for AQuate, to help Kituwah compete with AQuate for a government contract. AQuate seeks monetary damages and a permanent injunction, and it also moved for a temporary restraining order against the defendants. After a hearing, the court denied AQuate's motion for preliminary injunctive relief with leave to refile after limited discovery.

Now before the court are AQuate's renewed motion for a preliminary injunction and the defendants' motion to dismiss, docs. 17, 18. For the reasons that follow, the motion to dismiss is due to be granted in full, and AQuate's motion for preliminary injunctive relief is due to be denied as moot.

## I.[1]

AQuate is a tribal-owned government contractor based in Huntsville, and it holds a current contract to provide armed security services on the Sea-Based X-Band Radar-1, a vessel that operates as part of the United States' ballistic missile defense system. Doc. 13 at 2-4. AQuate first won the bid for the SBX-1 contract in 2012 and then won it again in 2017. *Id.* The current contract ends in September 2022, and earlier this year the military solicited offers from contractors for a new SBX-1 contract starting in October 2022. *Id.* Offers were due by March 18, 2022, which is the same day that AQuate filed its original complaint and motion for preliminary injunctive relief. *Id.*; *see* docs. 1, 2.

Jessica Myers worked at AQuate from 2013 to 2017, and she helped AQuate prepare its successful 2017 bid that expires in September. Doc. 13 at 2-4. Myers "held several positions with AQuate with responsibilities over corporate security and business development," and "had access to and knowledge of AQuate's SBX-1

---

[1] In considering the merits of the motion to dismiss, the court accepts AQuate's pleaded factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

contract terms, personnel, and bidding information." *Id*. As part of her employment, Myers signed several confidentiality and nondisclosure agreements that extend past her last day of employment. *Id*. Myers resigned from AQuate in September 2017 and allegedly "took with her copies of AQuate's contracts, proposals, personnel, and other security information." *Id*.

Myers is now the Director of Administration for Kituwah Services, a tribal entity formed in 2019 for the purpose of engaging in minority set-aside government contract work. *Id*. Kituwah submitted a competing offer to provide security services aboard the SBX-1, and in the weeks leading up to the March 18 deadline for bids, Myers reached out to several current and former AQuate employees. *Id*. AQuate alleges that in these messages, Myers "expressly solicited information regarding AQuate's pricing details and compensation structure for employees under the SBX-1 contract" and made offers of employment to AQuate employees contingent on Kituwah winning the contract. *Id*.[2] AQuate also claims that Myers impermissibly

---

[2] The defendants attached a screenshot of one of these messages to their initial motion to dismiss, doc. 8. In it, Myers asked a current employee:

> The current SBX contract ends in September of this year and my current employer has decided to [pursue] it. Our goal is to retain every MSO [maritime security officer] that wants to stay and maintain their pay. We don't want anyone to go backwards in pay. While I do recall some of the compensation structure from my previous capacity [at AQuate], I am not 100% sure. Would you be willing to discuss where you are pay scale wise so that in the event we are the successful awardee, we can keep everyone whole and no one risks losing any pay.

Doc. 8-1 at 157-58. Myers seems to have sent this same stock message to every current or former AQuate employee that she contacted. *Id*.

used her residual knowledge gained while working at AQuate to help with Kituwah's bid. *Id.* In sum, AQuate alleges that Myers and Kituwah have "confidential, proprietary, and sensitive information regarding AQuate's compensation structure, proposals, contract terms, and bidding strategies for SBX-1 contract work, which Myers and Kituwah intend to use in competition with AQuate for the SBX-1 solicitation." *Id.*

Based on this alleged conduct, AQuate brings three claims: (1) breach of contract against Myers for violating her prior employment agreements by (a) using AQuate's trade secrets outside of her employment with AQuate, (b) disclosing these trade secrets to Kituwah, (c) duplicating and removing the trade secrets from AQuate's premises, (d) failing to protect the trade secrets, and (e) engaging in conduct which competes with AQuate; (2) violations of the Alabama Trade Secrets Act, Ala. Code § 8-27-1 *et seq.*, against both defendants for knowingly possessing and using AQuate's trade secrets related to its SBX-1 contract, including information regarding its "compensation structure, proposals, contract terms, security details, and bidding strategies;" and (3) violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, against both defendants for the same alleged conduct. *Id.* at 4-10. AQuate seeks monetary and injunctive relief, including a preliminary injunction pending final judgment. *Id.*; *see also* doc. 17. The defendants move to dismiss, arguing that they are entitled to sovereign immunity and, alternatively, that (1) the

4

trade secret claims are barred by the relevant statutes of limitations and (2) the breach of contract claim should be dismissed for *forum non conveniens*. *See* doc. 18.³

## II.

Tribal entities, like Kituwah, are entitled to sovereign immunity, but this immunity does not apply where "the tribe clearly waived its immunity." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014); *Fla. v. Seminole Tribe of Fla.*, 181 F.3d 1237, 1241 (11th Cir. 1999). AQuate argues that by opting into the minority set-aside government contracting program and submitting a proposal for the SBX-1 contract, Kituwah necessarily waived its sovereign immunity, and it contends that its claims are thus not subject to dismissal on immunity grounds. *See* doc. 27 at 1-6.

### A.

The party seeking to defeat sovereign immunity has the burden of showing that the tribal entity "expressly and unmistakably waived its right to sovereign immunity." *Furry v. Miccosukee Tribe of Indians of Fla.*, 685 F.3d 1224, 1234 (11th Cir. 2012). To meet this burden, AQuate points the court to the requirements of the Small Business Administration's 8(a) business development program. Doc. 27 at 1-

---

³ To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). A complaint states a facially plausible claim "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

6. Only 8(a) program participants can bid on the SBX-1 contract, and participation requires tribal entities to adopt "express sovereign immunity waiver language, or a 'sue and be sued' clause which designates United States Federal Courts to be among the courts of competent jurisdiction for all matters relating to SBA's programs, including, but not limited to, 8(a) BD program participation, loans, and contract performance." *Id.* (citing 13 C.F.R. § 124.109(c)(1)). Indeed, Kituwah included this language in its Articles of Organization: "The United States Federal Courts are hereby designated as being among the courts of competent jurisdiction for all disputes or other matters relating to this Company's involvement in programs of the Small Business Administration, including but not limited to, 8(a) Business Development program participation, loans, and contract performance." *Id.* (citing doc. 18 at 4). Thus, AQuate contends, an immunity defense is unavailable here because "Kituwah's and Myers' activities related to competition for the SBX-1 set-aside contract, and their misappropriation of AQuate's trade secrets and proprietary information, are unquestionably 'disputes or other matters relating to [Kituwah's] involvement in [the] 8(a) Business Development program []' for which Kituwah has expressly waived any sovereign immunity it may otherwise have had." *Id.*

The defendants, in response, argue that AQuate's interpretation of the immunity waiver is too broad and "would stretch Kituwah's waiver well beyond its 8(a) qualification to reach ordinary business activities that merely relate to set-aside

6

contracts." Doc. 31 at 1-3.  In support, the defendants cite *Applied Scis. & Info. Sys., Inc. v. DDC Constr. Servs. LLC*, No. 2:19-cv-575, 2020 WL 2738243, (E.D. Va. Mar. 30, 2020).  The plaintiff in *Applied Sciences* sued a tribal entity, which was an 8(a) program participant, for breach of contract.  *Id*. at *1.  The defendant tribal entity won several of the underlying contracts at issue pursuant to the 8(a) program, and the plaintiff contended that the defendant's 8(a) immunity waiver rendered it unable to raise an immunity defense as to the breach of contract claims.  *Id*. at *1, 4-5.  The court disagreed:

> As Plaintiff points out, some courts have interpreted the SBA-required waivers broadly. *See Rassi v. Fed. Program Integrators, LLC*, 69 F. Supp. 3d 288, 292-92 (D. Me. 2014) (holding that the sue and be sued clause includes matters relating to an employee's claim of retaliation under the False Claims Act and Title VII because it is a matter which relates to the entity's 8(a) program participation); *Hunter v. Redhawk Network Sec., LLC*, No. 6:17-CV-0962-JR, 2018 WL 4171612, at *6 (D. Or. Apr. 26, 2018), report and recommendation adopted, No. 6:17-CV-0962-JR, 2018 WL 4169019 (D. Or. Aug. 30, 2018) (holding that when a tribal organization waives sovereign immunity as required by the SBA 8(a) program, that language is sufficiently broad to grant federal courts jurisdiction over employment related matters). These two cases however, are distinguishable in that both cases involve matters dealing with the SBA, particularly, a violation of SBA 8(a) program participation requirements. *See Rassi*, 69 F. Supp. 3d at 292-92 (indicating that complying with FCA and Title VII is required for SBA program participation); *See Hunter*, 2018 WL 4171612, at *6 (noting that the SBA prohibits discrimination in employment).
>
> Here, . . . [the plaintiff's] breach of contract claims are neither related to [the defendant's] participation in the SBA 8(a) program nor [] deal with [the defendant's] contract performance relating to the SBA 8(a) program. . . . Therefore, Plaintiff's claims are not included in [the

7

> defendant's] waiver of sovereign immunity which is limited to matters dealing with the SBA.

*Id*. at *5.

This analysis is persuasive and maps squarely onto the instant case. AQuate's claims are not based on Kituwah's participation in the 8(a) program and do not involve allegations that Kituwah violated any of the 8(a) program's requirements. Rather, its claims derive from the defendants' alleged misappropriation of trade secrets to bid on a contract that, incidentally, is only open to 8(a) participants. Thus, here, as in *Applied Sciences*, since the "essence" of AQuate's complaint is not related to the 8(a) program itself or its requirements, Kituwah's 8(a)-required waiver of sovereign immunity does not apply to AQuate's claims. *See Applied Sciences*, 2020 WL 2738243 at 5. Accordingly, this court does not have jurisdiction over Kituwah, and AQuate's claims against it are due to be dismissed.

**B.**

The court turns next to the defendants' argument that Kituwah's sovereign immunity extends to Myers and insulates her from AQuate's claims. Myers is indeed an "agent and employee of Kituwah," doc. 13 at 4, and employees of tribal entities, when acting in their official capacity, are entitled to a tribe's immunity from suits for damages. *Bay Mills*, 572 U.S. at 795-96. Pursuant to the *Ex Parte Young* doctrine, however, tribal officials are not immune from claims for injunctive relief for ongoing violations of federal law. *Id*. at 796; *Alabama v. PCI Gaming Auth.*,

8

801 F.3d 1278, 1288 (11th Cir. 2015).  And a tribal employee may be sued in her individual capacity for either monetary or injunctive relief; indemnification by the tribal entity does not entitle her to sovereign immunity.  *Lewis v. Clarke*, 137 S. Ct. 1285, 1291-92 (2017).  Accordingly, Myers is not entitled to Kituwah's sovereign immunity as to AQuate's: (1) trade secret claims insofar as these claims seek (a) injunctive relief to bar Myers from further misappropriating its trade secrets in violation of federal law, and (b) monetary relief for any alleged misappropriation that Myers undertook in her personal capacity; and (2) breach of contract claim for Myers's alleged contravention of her AQuate employment agreements.

## C.

The defendants also contend that even if Myers is not entitled to Kituwah's sovereign immunity, the court must still dismiss the action because Kituwah is a necessary party that cannot be joined.  Doc. 18 at 9-11.  A party must be joined to a lawsuit if "in that [party's] absence, the court cannot accord complete relief among existing parties," or if "that [party] claims an interest relating to the subject of the action and is so situated that disposing of the action in the [party's] absence may [] as a practical matter impair or impede the [party's] ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B).  Analysis of whether a party is necessary under Rule 19(a) is controlled by "pragmatic concerns, especially the effect on the parties and the litigation."  *Fla. Wildlife Fed'n Inc. v. United States Army Corps of Engineers*,

9

859 F.3d 1306, 1316 (11th Cir. 2017).  If joinder is required but not feasible, and if the court determines "in equity and good conscience" that certain claims should not proceed without the required party, those claims must be dismissed.  Fed. R. Civ. P. 19(b).  Four factors guide this equity analysis: "(1) how prejudicial a judgment would be to the nonjoined and joined parties, (2) whether the prejudice could be lessened depending on the relief fashioned, (3) whether the judgment without joinder would be adequate, and (4) whether the plaintiff would have any alternative remedies were the case dismissed for nonjoinder."  *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999).

The defendants assert that Kituwah is a necessary party under Rule 19 because its "interests and related business arrangements are involved, as these claims implicate Kituwah's existing client and employee relationships, current contracts, and future business opportunities."  Doc. 18 at 10.  They also maintain that Myers would be prejudiced by Kituwah's absence, noting, for instance, that she would "be unable to compel deposition testimony or documentary evidence from Kituwah, no matter how necessary that information may be to presenting her defense."  *Id*. at 11.  Thus, the defendants contend, Rule 19 requires dismissal "both due to Kituwah's sovereign immunity and the potential for injury to Kituwah and [] Myers[] should this case proceed without Kituwah."  *Id*.

The court agrees as to AQuate's trade secret misappropriation claims. As AQuate's complaint makes clear, "there is no adequate remedy [for those claims] other than one which includes an injunction." Doc. 13 at 7-8. If the misappropriation permeates Kituwah's bidding process as completely as AQuate alleges, such an injunction, even if only targeted at Myers, would necessarily require this court to wade into tribal affairs and enjoin certain aspects of Kituwah's commercial activities. This relief would be entirely incompatible with Kituwah's sovereign immunity to this suit. And although AQuate maintains that "full relief can be afforded to AQuate against Myers directly," doc. 27 at 11, the court is unconvinced as to the trade secret claims, particularly because AQuate does not explain what such Myers-targeted relief might entail or how the court might be able to fashion an injunction that provides meaningful relief to AQuate without infringing on Kituwah's immunity. Therefore, since the court "cannot accord complete relief" to AQuate on its trade secret claims in Kituwah's absence, and since a judgment against Myers would necessarily be either inadequate to afford complete relief or prejudicial to Kituwah, AQuate's trade secret claims must be dismissed under Rule 19.

This finding does not, however, mandate dismissal of the entire action. *See Laker Airways*, 182 F.3d at 850. Unlike the trade secret claims, AQuate's breach of contract claim does not necessarily implicate Kituwah's interests because (1)

AQuate pleads this claim against only Myers personally and (2) does not explicitly request injunctive relief in this claim. *See* doc. 13 at 4-5. The court could thus conceivably provide complete relief by fashioning a damage award against Myers if it found that she did, in fact, violate her employment agreements with AQuate. Such a damage award, unlike an injunction against Myers preventing her from continuing to share the alleged trade secrets with Kituwah, would not interfere with Kituwah's commercial activities or otherwise infringe on Kituwah's sovereignty. And although Kituwah passingly suggests that "any judgment against [] Myers necessarily reaches Kituwah's coffers," doc. 31 at 3, given that Kituwah's indemnity of Myers would not entitle her to its sovereign immunity, *see Lewis*, 137 S. Ct. at 1291-92, the court is unpersuaded that even Kituwah's potential liability for any damage award against Myers would result in sufficient prejudice to require dismissal under Rule 19.

\* \* \* \* \* \* \*

In sum, Kituwah has not waived its sovereign immunity with respect to AQuate's claims against it, and Kituwah is a necessary party to AQuate's trade secret claims against Myers. Accordingly, the trade secret claims are due to be dismissed.[4]

---

[4] As an aside, these claims are also likely to due be dismissed on statute of limitations grounds. A party must file Alabama Trade Secrets Act claims less than two years – and federal claims less than three years – "after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Ala. Code § 8-27-5; 18 U.S.C § 1836(d). During the hearing on the initial motion for a preliminary injunction, plaintiff's counsel conceded that AQuate knew of Myers's alleged misappropriation of trade secrets as far back as September 2017, when she allegedly took copies of sensitive documents upon her resignation. AQuate, then, had until September 2020 to timely file suit, but failed to do so until March 2022.

Since AQuate's breach of contract claims against Myers can proceed without Kituwah, however, the court turns next to Myers's *forum non conveniens* argument.

### III.

A court may decline to exercise jurisdiction "where it appears that the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum." *Ford v. Brown*, 319 F.3d 1302, 1306-07 (11th Cir. 2003). The inquiry generally asks (1) whether an "available and adequate" alternative forum exists and, if yes, whether (2) "the private and public interests" favor adjudication there and (3) the plaintiff can reinstate the lawsuit in that forum "without undue inconvenience or delay." *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1338 (11th Cir. 2020); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951 (11th Cir. 1997). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (internal citation omitted). For one, the plaintiff's choice of forum no longer merits any weight, and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id*. Also, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum" and "may consider arguments about public-interest factors only." *Id.* at 64.

Basically, "forum-selection clauses should control except in unusual cases." *Id*. at 63.

As an AQuate employee, Myers signed a policy which "governs all aspects of employment dispute resolution." Doc. 36-1 at 2. This policy provides that the "tribal court of the Alabama Quassarte Tribal Town shall be the exclusive venue for litigation arising out of [Myers's] employment." *Id*. at 2-3. The existence of this forum-selection clause shifts the burden to AQuate to demonstrate that transfer to the bargained-for forum is unwarranted. To this end, AQuate argues that this policy should not apply to its breach of contract claim because "Myers is not an employee, AQuate's claims against Myers and Kituwah do not arise 'in the workplace,' and most importantly because there is no alternative forum to which the case may be referred." Doc. 27 at 11-12.

First, that Myers is not currently an employee does not render the policy's forum-selection clause inapplicable to AQuate's breach of contract claim. At the core of this claim is Myers's alleged violation of various contractual terms stemming from her employment with AQuate, and the dispute resolution agreement is not cabined to claims brought only while the Myers is an active employee. Indeed, the policy explicitly applies to "all legal claims that the employee may have against the Alabama-Quassarte Tribal Town Companies, up to and including discharge." Doc.

36-1 at 2. This language clearly implies that even disputes brought after an employee leaves the organization are subject to the dispute resolution policy and its terms.

For similar reasons, AQuate's breach of contract claim indisputably arose in the workplace. AQuate bases this claim, at least in part, on Myers allegedly "[d]uplicating and removing AQuate's trade secrets and other proprietary, confidential, or sensitive information from AQuate's premises for purposes other than to benefit AQuate and without AQuate's permission." Doc. 13 at 4-5. To state the obvious, this alleged copying of documents necessarily must have occurred in the workplace, thus bringing AQuate's instant breach of contract claim squarely within the ambit of the dispute resolution policy.

And as for AQuate's contention that "[t]here is no tribal court in the Alabama-Quassarte Tribal Town," doc. 27 at 11-12, the defendants furnish copies of two different orders that bear the heading "In the District Court of Alabama-Quassarte Tribal Town" and are signed by the Chief Judge of the Alabama-Quassarte Town Tribal Court, *see* doc. 31-2. AQuate maintains that this court does not actually exist and was instead "fabricat[ed]" by the "former chief of AQTT" to "misappropriate assets of AQTT and [] improperly take control of the tribe." Doc. 32 at 2. The court's review, however, does not reveal any basis to suggest that these orders are fraudulent or were otherwise created for the purpose of deceiving this court or creating a fake forum. And, frankly, given the principles of comity that undergird

15

tribal sovereignty, the court is exceedingly hesitant to weigh in on whether this tribal court is, as AQuate alleges, illegitimate.

As a result, absent clear evidence from AQuate to the contrary, the court finds that the AQTT Tribal Court is an available and adequate forum for AQuate to litigate its breach of contract claim against Myers. And, since the private factors "weigh entirely in favor of the preselected forum" and AQuate does not identify any public-interest factors that counsel against enforcement of the forum-selection clause, the court will decline to exercise jurisdiction over AQuate's breach of contract claim against Myers and will instead dismiss with leave to refile in the parties' bargained-for forum – the Alabama-Quassarte Tribal Town court.

## IV.

For these reasons, AQuate's trade secret claims are due to be dismissed based on Kituwah's sovereign immunity and Rule 19's required joinder provisions, and its breach of contract claim is due to be dismissed for *forum non conveniens*. The court will therefore grant the defendants' motion to dismiss, doc. 18, and deny AQuate's motion for a preliminary injunction, doc. 17, as moot. A separate order will be entered.

**DONE** the 25th day of July, 2022.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE